1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9
10

DEVIN MICAEL RYAN,

CASE NO. C19-753 MJP

11

                    Plaintiff,

ORDER DENYING MOTION FOR
SUMMARY JUDGMENT

12

        v.

13

CORRECTIONS DEPUTY ADAM
HANSEN, et al.,

14
15

                    Defendants.

16
17

THIS MATTER comes before the Court on Plaintiff's Motion for Summary Judgment

18

(Dkt. No. 39).  Having reviewed the Motion, the Response (Dkt. No. 41), and all related papers,

19

the Court DENIES Plaintiff's Motion.

20

**Background**

21

Plaintiff alleges that while being transported to the Snohomish County Jail and

22

Courthouse with 19 other inmates, he objected to the assault of another inmate by Defendant

23

Adam Hansen.  (Dkt. No. 25 (Second Amended Complaint); see also Dkt. No. 35 (Declaration of

24

Adam Hansen).)  Plaintiff and the other inmates wore waist shackles during the transport with

1   their hands secured at the front of their bodies.  (Dkt. No. 32 (video surveillance).)  After

2   complying with an order to face the wall, Plaintiff continued talking, and Defendant Hansen then

3   rushed to Plaintiff and pulled him "backwards off his feet by his waist shackles, dragging him

4   down the hallway."  (Dkt. No. 25 at 3.)  According to Plaintiff, Defendant then slammed him

5   against the gun lockers and Plaintiff responded by saying: "You're a real tough guy, huh?"  (Id.)

6   Defendant then "threw Plaintiff to the floor aggressively and procede[d] to slam his knee into

7   Plaintiff's lower back."  (Id.)

8          Defendant describes Plaintiff's level of resistance differently, asserting that after he

9   removed Plaintiff from the line of inmates by "grabbing him by the arm and shirt," he pinned

10  Plaintiff against the wall with his hip and called for backup with his radio.  (Dkt. No. 35,

11  Declaration of Adam Hansen ("Hansen Decl.").)  Immediately after the call, Hansen alleges he

12  felt Plaintiff "push off the wall and move his head," and was "[f]earful that Ryan might attempt

13  to head butt me, or spin away from my grasp."  (Id.)

14         Following the incident, Corrections Sergeant Michael Ball conducted an investigation

15  and found that the "manner in which C/D Hansen took inmate Ryan to the ground isn't at

16  question, rather it's the intent or why he was taken to the ground . . . . The video supports there

17  was no resistance just before the takedown."  (Dkt. No. 25, Ex. C.)  Further, two other deputies

18  told Sergeant Ball that Plaintiff posed no risk.  Deputy Downing who was standing within

19  arms-length of Plaintiff said he "didn't see Ryan as a threat at all" and "didn't know why Hansen

20  felt he needed to remove Ryan."  (Id. at 20.)  Deputy Miller "didn't know what prompted C/D

21  Hansen to remove the inmate from the line other than maybe because he was shouting."  (Id. at

22  18.)  Sergeant Ball found that Defendant had violated the use of force policy and that Defendant

23  Hansen acted recklessly.  (Id. at 22.)  But in an administrative review, Corrections Major Jamie

24

1    Kane described his non-concurring opinion with Sergeant Ball, stating: "Being vocal <u>is</u> a level of

2    resistance in and of itself as outlined in the use of force continuum contained in policy 10.0.2,

3    *Use of Force*."  (Dkt. No. 25, Ex. J at 44 (emphasis in original).)  Considering this verbal

4    resistance, Major Kane concluded, Defendant's actions were "justified, reasonable, lawful, and

5    within policy."  (<u>Id.</u> at 45.)

6          On April 29, 2020, Magistrate Judge Theiler submitted a Report and Recommendation,

7    concluding that Plaintiff's claims against Snohomish County should be dismissed, but finding

8    that Plaintiff had presented sufficient evidence to proceed against Defendant Hansen.  (Dkt. No.

9    38.)  Plaintiff now moves for summary judgment based on the findings in the Report and

10   Recommendation.

11               **Discussion**

12   **I.**     **Legal Standard**

13          Summary judgment is proper if the pleadings, depositions, answers to interrogatories,

14   admissions on file, and affidavits show that there is no genuine issue of material fact and that the

15   moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  The movant bears

16   the initial burden to demonstrate the absence of a genuine dispute of material fact.  <u>Celotex Corp.</u>

17   <u>v. Catrett</u>, 477 U.S. 317, 323 (1986).  A genuine dispute over a material fact exists if there is

18   sufficient evidence for a reasonable jury to return a verdict for the non-movant.  <u>Anderson v.</u>

19   <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 253 (1986).  On a motion for summary judgment, "[t]he

20   evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his

21   favor."  <u>Id.</u> at 255.

22         To prevail on an excessive force claim, "a pretrial detainee must show only that the force

23   purposely or knowingly used against him was objectively unreasonable."  <u>Id.</u> "[O]bjective

24

reasonableness turns on the 'facts and circumstances of each particular case,'" without regard to the officers' underlying intent or motivation.  Id.  (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)).  A pretrial detainee must demonstrate a defendant's acts or omissions were objectively unreasonable, and identify objective facts indicating the "challenged governmental action is not rationally related to a legitimate governmental objective, or that it is excessive in relation to that [objective]."  Id. at 2473-74.

The Court must weigh the circumstances from the viewpoint of a reasonable officer at the scene and "account for the legitimate interests that stem from the government's need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security."  Id. (internal quotation and citation omitted). The non-exclusive list of factors potentially relevant to the assessment of reasonableness include:

> [T]he relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

Id. at 2473 (citing Graham, 490 U.S. at 396).

In this case, Plaintiff appears to argue he is entitled to summary judgment based on Magistrate Judge Theiler's recommendation that Defendants' Motion for Summary Judgment be denied as to Defendant Hansen.  (Dkt. No. 39 at 3.)  But as Defendants note, Magistrate Judge Theiler's Report and Recommendation does not find there is no evidence to support Defendants' case.  (Dkt. No. 41 at 3.)  To the contrary, the Report and Recommendation, found:

> [D]isputed facts and outstanding issues on other factors relevant to determining whether Hansen's actions were objectively reasonable. Those issues include the necessity of plaintiff's removal and the take-down, the severity of the security problem, the threat reasonably perceived by Hansen, and the existence of active resistance. With respect to the remaining factor, extent of injury, the evidence is minimal and unclear.

(Dkt. No. 38 at 11-12 (citing Dkt. No. 25, Ex. L, at 51 (report of Dr. Andrews finding minimal to no findings on examination); Ex. A (report of Dr. Chrisman failing to include any examination findings or testing results and recommending conservative treatment).  Given the undisputed evidence that Plaintiff continued to talk during the incident (Dkt. No. 25 at 3), the contradictory opinions of other corrections officers concluding that Defendant Hansen's use of force was either unwarranted or appropriate in the situation (Id., Ex. J at 44), and the "minimal and unclear" evidence regarding the extent of Plaintiff's injury, the Court finds that significant questions of fact remain as to whether no reasonable officer in Defendant Hansen's shoes would have acted as he did.

Plaintiff also argues that the memorandum of Major Jamie Kane, submitted in response to Sergeant Ball's report, constitutes "an admission of guilt or wrongdoing on the part of Defendant Hansen."  But Major Kane's memorandum is in fact supportive of Defendant's position, concluding that "considering all the environmental factors at the time of the event it appears completely reasonable and justifiable [for Defendant] to gain a greater position of control while waiting for backup deputies to respond."  (Id. at 5.)

## Conclusion

Finding that Plaintiff has not met his burden of demonstrating the absence of a genuine dispute of material fact, the Court DENIES his motion for summary judgment.

//

//

//

//

//

The clerk is ordered to provide copies of this order to all counsel.

Dated August 4, 2020.

Marsha J. Pechman
United States Senior District Judge